```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                       DIVISION OF ST. CROIX

TAZEWELL M. REED                     :         CIVIL ACTION
                                     :
         v.                          :
                                     :
NATIONAL RADIO ASTRONOMY             :
OBSERVATORY (NRAO)                   :         NO. 05-71
```

MEMORANDUM

Bartle, C.J.                                          November 17, 2008

Plaintiff Tazewell M. Reed has filed this diversity action against his former employer Associated Universities, Inc., as the operator of the National Radio Astronomy Observatory ("NRAO"), for wrongful discharge, misrepresentation, breach of contract, breach of the duty of good faith and fair dealing, and intentional or negligent infliction of emotional distress. He also seeks punitive damages.

Before the court is the motion of defendant for summary judgment on all of plaintiff's claims. Reed was represented by counsel when he filed his complaint, but counsel was subsequently permitted to withdraw. Reed has filed pro se his multiple responses to NRAO's motion for summary judgment.

A moving party is entitled to summary judgment only where there is no genuine issue of material fact. Fed. R. Civ. P. 56; V.I. Loc. R. Civ. P. 56.1; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reaching its decision, a court must view all facts and any reasonable inferences therefrom in the

light most favorable to the non-moving party.  <u>In re Flat Glass Antitrust Litig.</u>, 385 F.3d 350, 357 (3d Cir. 2004).  In general,

> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).  We note, however, that although "the same standards for summary judgment apply to <u>pro se</u> litigants, courts read the [submissions] of a <u>pro se</u> plaintiff liberally and interpret them to raise the strongest arguments that they suggest."  <u>Agogbua v. Abington Mem'l Hosp.</u>, No. Civ.A. 03-6897, 2005 WL 1353612, at * 3 (E.D. Pa. May 31, 2005) (internal quotations omitted).  Nevertheless, on summary judgment we may consider only those facts that would be admissible at trial.  Fed. R. Civ. P. 56(e)(2); <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997).

I.

Reed has offered no affidavits or other sworn testimony.  He has submitted documents that would qualify as admissible evidence, but they are either duplicative of the ones NRAO has supplied to the court, harmful to his case, or immaterial to the issues before us.  We need only rely on the facts as stated by NRAO.

The following facts are taken from the affidavit of Paul J. Rhodes, Reed's former NRAO supervisor.  NRAO operates the

-2-

Very Long Baseline Array ("VLBA"), a system of ten enormous radio antennae that work in concert to collect astronomical data for major, often federally-funded, research projects.  The westernmost antenna in the VLBA is in Hawaii and the easternmost is in St. Croix.  The other eight antennae are located in the continental United States.  Researchers applying to use the VLBA must gain approval for their projects through a rigorous academic screening process.  Even once approved, the list of astronomers and astrophysicists waiting to use the VLBA is often longer than one year.

NRAO hired Reed as a senior electronics technician in November, 2000.  At the time of Reed's employment with NRAO, the data collected from the VLBA were recorded on reels of magnetic tape.  Reed's "most basic and critical" job responsibility was to replace the reels of tape for the St. Croix antenna.  Because the VLBA conducts around-the-clock astronomical observations, a failure to change the tape in a timely manner resulted in a permanent and irreversible loss of data.  As the easternmost link in the chain, the St. Croix antenna is of particular importance.  If the St. Croix antenna fails for any reason, including a lack of recording tape, 690 miles of the baseline are lost.[1]  Such a failure can compromise an entire research project.  A loss of any amount of data is an extraordinary waste of resources and is a matter of great consequence to researchers.

---

1.  The next easternmost antenna is located in Hancock, New Hampshire.

As of January, 2002, Reed was personally responsible for more lost data at the St. Croix facility than data lost at any of the other nine stations in the previous five years. The majority of Reed's data losses were due to his failure to arrive at the station on time when tapes were due to be changed. Rhodes advised Reed on several occasions of his data loss problems and warned him that his job was in jeopardy. After an incident on January 8, 2002, Rhodes offered Reed specific protocols to follow to protect against future losses. In a letter dated January 9, 2002, he instructed Reed:

> 1. Always use "Tech Messages" on your arrival and departure from the station.
> 2. Arrive at the station at least an hour before the scheduled tape change time.
> 3. Make sure Array Operations is aware of any deviations from your normal work hours at the station (0830 - 1630 AST)
> 4. Check CE1 before each tape change to verify schedules.
> 5. If you think personal commitments may interfere, change the tape earlier than scheduled.
> 6. Check the % remaining on the drive being used during a tape change on weekends.
> 7. Make sure your cell phone or pager is in working order at ALL times.
> 8. Call operations using the 800 numbers if you have any doubt about tape change or arrival times.

Def.'s Ex. 1. Following the instructions, the letter concludes,

> I want to make sure that you understand the seriousness of lost data due to missing a schedule[d] tape change. As I told you on the phone, you have had more missed tape changes in the past year than other Station Technicians have in 5 or more years. We have discussed this situation several times and I have offered suggestions that you seemed to have ignored. If you feel that there is some kind of training issue, please let me know

>           and we will review the areas as required.
>           Further losses of data on your part will lead
>           to disciplinary action up to an including
>           discharge.

Id.

After another failed tape change resulting in the loss of two hours of data, Rhodes reiterated the above "list of duties" and told Reed in a letter dated February 5, 2002 that his compliance with the instructions was a "mandatory job requirement." Def.'s Ex. 2. He also directed Reed to call Array Operations[2] every four hours when he was on-call to determine the amount of time left on the mounted tapes and to schedule any changes to his arrival time. After two incidents on November 25, 2002 and December 15, 2002 where Array Operations was unable to reach Reed during his scheduled work hours, Rhodes wrote yet another letter to Reed on December 17, 2002 reminding him that he must notify Array Operations of any changes to his schedule and requiring him to contact NRAO's employee assistance program. Def.'s Ex. B.

Despite the warnings and Reed's participation in the employee assistance program, Reed was late to two time-sensitive maintenance and repair projects at the St. Croix facility on September 8, 2003 and September 15, 2003 respectively. Rhodes, in consultation with the NRAO Deputy Assistant Director and the Electronics Division Head, decided to terminate Reed. On

---

2. The Array Operations Center, located in New Mexico, houses the NRAO staff scientists' offices and is where the VLBA stations send the data tapes for processing.

September 29, 2003 Reed was offered the choice between a voluntary resignation, in which case he could receive termination pay or discharge. Reed signed a letter of resignation that day and received his termination pay.

## II.

Reed's primary claim is for wrongful discharge. He does not set forth in his complaint or otherwise the legal basis for his wrongful discharge claim, but we will presume it is brought under the Virgin Islands Wrongful Discharge Act. V.I. Code Ann. tit. 24, § 76. NRAO moves for summary judgment on the ground that it lawfully discharged Reed under that statute. See id. § 76(4)-(7).

Under the Virgin Islands Wrongful Discharge Act, an employer may terminate an employee

> (4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;
>
> (5) who performs his work assignments in a negligent manner;
>
> (6) whose continuous absences from his place of employment affect the interests of his employer; [or]
>
> (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer.

V.I. Code Ann. tit. 24, § 76. The facts as stated by NRAO clearly show that Reed was at least negligent in failing to change the tapes in a timely manner, that his repeated

unscheduled absences and late arrivals at the St. Croix facility affected the interests of NRAO, and that his absences impaired his usefulness to NRAO by compromising NRAO's very mission. Under these circumstances, NRAO was justified in firing Reed as a matter of law.

Even if we considered Reed's unsworn statements in his responses to NRAO's motion for summary judgment, he would still be unable to show a genuine issue of material fact or to otherwise defeat NRAO's motion for summary judgment.  In his filings with this court, Reed does not deny that he failed to change the tapes or that he received Rhodes' letters.  In fact, Reed emailed a response to Rhodes' February 5, 2002 letter in which he admits the following:

> I am pleading for mercy.  I have really screwed up and realize my job is on the line here.  I have gone over the facts and I am at fault without doubt.  I'm not sure why this happened but I do know that it could have been avoided if I had my internet at home working.  As of today (Monday) I will have the internet up at home.  I am having a hard time believing how I could let this happen.  If given the opportunity I will do whatever you suggest to keep my job here with the NRAO.
>
> There's been a lot going on here that may have been distracting my judgment lately. Maybe I should take a little vacation time and get my affairs in order.

Def.'s Ex. C.[3]

---

3.  Reed seems to concede the authenticity and accuracy of this email in one of his pro se briefs.  He states: "Valid reference in conception to Plaintiff's intent in the email, (the Defendant claims as, "Exhibit C"); 'Pleading for Mercy' to Rhodes in
(continued...)

Reed attempts in his response to NRAO's motion to shift the focus from his own failures to the shortcomings of a fellow colleague, Peter Allen.  He argues that the November 25, 2002 incident, when Array Operations was unable to reach him, was not his fault because Allen had taken over the role of being on-call for that time period.  Even if Reed were to testify to this under oath, it addresses but one of the many incidents NRAO cites as grounds for Reed's termination.  Reed fails to deny or even explain his other absences.  Reed's descriptions of Allen's alleged misconduct and inappropriate work behavior are unrelated to Reed's own performance or termination and are therefore irrelevant.  Similarly, Reed's examples of his own achievements and isolated areas of competency while working for NRAO do not raise a genuine issue of material fact as to whether he failed to perform properly his job duties on the occasions NRAO cites as justification for his termination.

Based on the evidence before us, and liberally construing Reed's pro se filings, we determine that NRAO had lawful grounds to terminate Reed, and we will grant its motion for summary judgment on Reed's claim for wrongful discharge.

We likewise conclude that Reed's other claims for relief lack merit.  Reed's second claim is for misrepresentation. He alleges that NRAO purported it would not terminate him without just cause.  Even if Reed's allegation were true, for the reasons

---

3. (...continued)
reference to the letter in discipline to the Plaintiff on February 5th 2002."  Pl.'s Pleading Notice, Part Three, at 12.

discussed above we determine that NRAO had just cause to terminate him under the Wrongful Discharge Act and therefore it is entitled to summary judgment on this claim.

In his third claim Reed alleges that NRAO breached its employment contract with him. Nowhere does Reed adequately explain the terms of this contract or provide a copy of said contract. He relies on a document titled "VLBA Station Policy" in which he has underlined certain provisions. Among other things, the VLBA Station Policy explains the procedure for setting a station technician's schedule: "The technician's daily schedule may be adjusted to best accommodate his personal requirements, but the requirements of the VLBA schedules and maintenance must take priority." Reed has drawn an asterisk next to this sentence, but we fail to see how it raises any dispute with the facts as stated by NRAO.

Reed also focuses on a provision of the VLBA Station Policy that enables an on-call technician to "minimize his overtime by requesting an alternate day off in his normal workweek schedule." Reed refers to this as comp time and contends that he achieved a "balanced" 40 hour workweek by spending a half-hour picking up the station mail on his way to work each day. NRAO, however, has raised no issue about the number of hours Reed worked. Its grounds for discharge were based on specific absences and Reed's failure to perform essential job duties. In any event, the VLBA Station Policy states two sentences after the one Reed highlights: "The Field

-9-

Group Leader, Array Operations and the other site technician must be notified of any deviations in the regular work schedule via phone and/or e-mail messages." Rhodes attests to the fact that Reed failed to inform anyone of changes to his work schedule on numerous occasions, and Reed does not deny this charge with the exception of the November 25 incident noted above. Thus, Reed has not created a genuine issue of material fact regarding his breach of contract claim.

In his fourth claim Reed asserts that NRAO breached its duty of good faith and fair dealing. To state such a claim, Reed "must allege acts amounting to fraud or deceit on the part of the employer." Lue-Martin v. March Group, et al., No. 03-105, 2008 WL 2966406, at *12 (D.V.I. Jul. 30, 2008). He has described no facts amounting to fraud or deceit on the part of NRAO.

Reed's fifth claim seeks damages for either intentional or negligent infliction of emotional distress. A claim for intentional infliction of emotional distress requires a showing of extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress. Eddy v. V.I. Water & Power Auth., 955 F. Supp. 468, 478 (D.V.I. 1997) (quoting Restatement (Second) of Torts, § 46). Even if we take as true Reed's unsworn allegations, he cannot succeed. He has described no extreme or outrageous conduct. To succeed on a claim for negligent infliction of emotional distress a plaintiff must prove physical harm and foreseeability. Nicholas v. Wyndham Int'l, Inc., No. 01-147, 2007 WL 4201032, at *7 (D.V.I. Nov. 13, 2007).

-10-

Reed has described no physical injuries. We will deny this claim.

Finally, Reed requests punitive damages in Count Six. To reach a jury on the issue of punitive damages Reed must show that NRAO's actions "were outrageous [or] done with evil motive or reckless indifference to his rights." Justin v. Guardian Ins. Co., Inc., 670 F. Supp. 614, 617 (D.V.I. 1987). Reed has stated no outrageous facts or actions of NRAO that would rise to the level of evil motive or reckless indifference to Reed's rights and cannot go to a jury on this claim.

Thus, for the reasons stated above, we will grant the motion of defendant NRAO for summary judgment on all counts.